# Llewellyn, Appellant, *v.* Cauffiel.

215    23
j224   s 71
224    369

*Equity—Equity practice—Evidence—Admission of evidence—Disregarding evidence—Harmless error.*

A decree on a bill in equity will not be reversed on the ground that evidence was erroneously admitted, where it appears that such evidence was entirely eliminated from the case by the trial judge in arriving at his conclusion.

*Equity—Injunction—Right of way—Possession of land.*

On a bill in equity to restrain the erection of a trestle on a triangular piece of land on the ground that the erection of the trestle would interfere with the mining operations of the plaintiff, the court found as a fact that the plaintiffs were entitled only to a right of way over the land, and that the erection of the trestle did not interfere with the use of such right of way. *Held,* that it was proper to dismiss the bill.

In such a case the right of the plaintiffs to an injunction does not depend on whether the defendant has title to the land but whether the plaintiffs have the title or the right to the possession of it. If they have neither, except as to a right of way, they cannot contest the defendant's right to occupy any other part of the premises.

ELKIN, J., dissents.

Argued March 7, 1906. Appeal, No. 21, Oct. T., 1906, by plaintiffs, from decree of C. P. Cambria Co., Sept. T., 1905, No. 7, dismissing bill in equity in case of D. J. Llewellyn and J. C. Yeagley, trading as Llewellyn & Yeagley, v. Daniel Cauffiel. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and ELKIN, JJ. Affirmed.

Bill in equity for an injunction.

The averments of the bill and answer and the facts of the case are set forth in the opinion of the Supreme Court.

*Errors assigned* were (1–12) various rulings on evidence sufficiently referred to and grouped in the opinion of the Supreme Court, and (13) decree dismissing the bill.

*H. W. Storey,* with him *Robert S. Murphy,* for appellant.— Where land purchased is devoted by the owners to a particular use, which use entered into the consideration of the contract by which it was created, one of the tenants in common cannot

defeat the joint use by a writ of partition without the consent of the cotenants: Latshaw's Appeal, 122 Pa. 142.

The plaintiffs had a right to have their road kept free from obstructions, and Cauffiel never acquired the right that we know of by which he could erect a pier in the center of the road and compel the plaintiffs to make another to suit his convenience.

*F. P. Martin,* with him *Forest & Percy Allen Rose,* for appellee.—If there had been any question as to the location of this right of way, even granting that it extended, not from the tipple to the mines, but across this triangular piece of land, the intention of the parties to the articles of copartnership with respect to its location is conclusively established by the use to which the grant thereof was put by the partnership and the acquiescence therein by the owner of the land, Jane C. Yeagley: Kraut's Appeal, 71 Pa. 64; Stove Company v. Evans, 9 Pa. Superior Ct. 597.

Despite the fact that this copartnership firm had several years yet to run, Jane C. Yeagley, one of the members thereof, had a right to dissolve it before the expiration of the term: Mason v. Connell, 1 Wharton, 381; Slemmer's Appeal, 58 Pa. 168. And having the right to dissolve the partnership before the end of the term, Mrs. Jane C. Yeagley accomplished that end by a sale of her interest therein to the defendant below: Horton's Appeal, 13 Pa. 67.

OPINION BY MR. JUSTICE MESTREZAT, April 16, 1906:

On April 22, 1905, the plaintiffs filed this bill against the defendant, averring substantially as follows: That by written articles, dated January 28, 1901, the plaintiffs formed a copartnership for the purpose of leasing, mining and shipping bituminous coal from their coal plant, situated in the seventeenth ward of the city of Johnstown; that the partnership property consists of coal in place, mine tracks to and on the coal tipple, mine cars, the necessary ground appurtenant thereto for carrying on the business, and a siding for the loading of cars on the Johnstown & Stonycreek Railroad, said land having a frontage of about 200 feet on the railroad and varying in width from fifty to eighty-one feet upon which the coal tipple is erected; that

they have made a road for teams for the purpose of hauling supplies and materials to the coal tipple and scale office which passes over said ground, and is the only way to deliver the same; that all of the said property, appliances, road, siding and ground above described are absolutely necessary for the operation of the plant; that defendant has entered on the land and dug three trenches and constructed masonry for a coal tipple in one of them, with the intention of constructing masonry in the two other trenches for the purpose of erecting a coal tipple on the land so that he can load cars standing on the railroad siding which is the property of the plaintiffs; that if defendant is permitted to erect his coal tipple on the land it would absolutely destroy the property of the plaintiffs, inasmuch as it would be impossible to load cars on their siding, and that it would also destroy the wagon road and the proposed use of the property by the plaintiffs. The bill prayed for an injunction.

The defendant in his answer admits the plaintiffs' partnership, and that its property consists of certain interests in coal, mine tracks to and on the coal tipple, mine cars, certain ground appurtenant to the said coal tipple, a siding for the loading of cars on the Johnstown & Stonycreek Railroad; avers that the land on which the coal tipple is erected has a frontage of 200 feet on the railroad; denies that the width of the land upon which the coal tipple is erected varies from fifty to eighty-one feet, and avers that it varies from a point to eighty-one feet; denies that the partnership possesses a right of way for teams over the land for the purpose of hauling supplies and materials to the coal tipple and scale office, and avers that the only right of way it enjoys thereover is for the purpose of affording it access to its coal tipple from a coal mine formerly operated by it; avers that any wagon road constructed by Llewellyn or the partnership over the land is not the only means of hauling or delivering supplies and materials to the plaintiffs' coal tipple and scale office; denies that such road and all the ground mentioned in the bill are absolutely necessary for the operation of plaintiffs' plant; denies that the plaintiffs are the sole owners of the land; avers that in 1905 he purchased the land of Mrs. J. C. Yeagley and was given possession of it; admits that he entered upon it, dug trenches and constructed masonry for the pur-

pose of erecting a coal tipple on the land, and alleges that his structures will be located not less than twenty feet from the plaintiffs' right of way over the land, and will be constructed in such manner as not to interfere with the plaintiffs' tipple, side track or any road which the plaintiffs have located upon the land; denies that he intends using the plaintiffs' siding; avers that he intends to erect his coal tipple on the land in such a way as will not interfere with the plaintiffs' rights thereon.

A preliminary injunction was granted by the court. Subsequently, on motion to continue the injunction, testimony was taken, and, after argument by counsel, the injunction was dissolved and the bill was dismissed. The learned judge found, inter alia, as follows : "At the time of the formation of the partnership of Llewellyn & Yeagley, J. C. Yeagley was the owner in fee of certain lands adjoining the mine property. Upon a portion of this land the tipple was erected, and over it was conveyed in mine cars the product of the mine to a siding on the Johnstown & Stonycreek Railroad. In addition to this way of reaching the mine there was a footpath which had been some years previously, and later occasionally, used by teams and wagons going to and from plaintiffs' mine. This wagon way was at one time laid out and constructed so far as it was necessary for that use, but at the time of the entry complained of it was grown up with shrubs, weeds and bushes, in so much that its boundaries and location were somewhat uncertain, and caused the witnesses to slightly differ as to its location. This way was a well defined way when the partnership was formed, and, together with the way used for reaching the railroad siding, constituted the only ways used in connection with the operation of this mine. Against the objection of the defendant we received testimony relating to both ways, instead of confining it to the right of way by which the railroad was reached, as contended for by the defendant. From all of the testimony in the case it was clear to the court that the defendant had not erected, nor was there in progress of erection by him, nor any threatened erection by him upon the land of Mrs. J. C. Yeagley, over which land the firm of Llewellyn & Yeagley claimed the right of way, which in anywise interfered with any right of way now in use, heretofore used,

or hereafter contemplated, or which would be in anywise necessary for the operation of the mine of Llewellyn & Yeagley."

It appears from the plaintiffs' evidence that in 1891 Benjamin F. Yeagley was the owner of several tracts of land in the seventeeth ward of the city of Johnstown. He and Llewellyn in that year formed a partnership and engaged in the mining and selling of bituminous coal at that place. This partnership continued until 1895 when Yeagley died and devised his real estate and his interest in the partnership to his son, Henry J. Yeagley, who, a few months thereafter, conveyed the real estate to his mother, Mrs. J. C. Yeagley, one of the plaintiffs. The plaintiffs also offered in evidence the articles of agreement, dated January 28, 1901, by which Llewellyn and Mrs. Yeagley entered into a copartnership for the purpose of leasing, mining and selling bituminous coal for ten years, in which agreement it is set forth that Llewellyn had contributed " as stock certain leaseholds or right to mine and take out coal, . . . . one gondola car, a one-half interest in seven mine cars, three mules and harness . . . . amounting in the whole to $10,000 ; " and Mrs. Yeagley had contributed " as stock, railroads, sidings, two gondola cars, mine cars, scales, tipples, buildings, and a one-half interest in three mules, harness, etc., and a right of way over land to mine . . . . amounting in the whole to the sum of $10,000." Each party sells and transfers his property to the partnership.

It, therefore, appears that not only have the plaintiffs failed to sustain their averment in the bill that they own the triangular piece of land on which the defendant proposes to erect his trestle and coal tipple, but that their own evidence conclusively shows that the title to the land in question was never in Llewellyn or his firm, but is now, and has been since 1895, in Mrs. J. C. Yeagley. By the articles of copartnership, she granted to the firm as part of her contribution to the stock " a right of way over land to mine." That is the only interest the partnership has in the Yeagley lands. It would have been a fair interpretation of this grant if the learned judge had held that it was a right of way from the tipple at the railroad to the mouth of the mine ; that would have given full effect to the language of the grant. But as will be observed from the quota-

ation from the court's opinion, the learned judge did not confine the plaintiffs to a right of way from the tipple to the mouth of the drift but, against the contention of the defendant, held that the plaintiffs might show that at the formation of the partnership there was a way used by teams across the piece of ground in controversy leading to the plaintiffs' mine. This was giving the broadest construction to the grant in the partnership contract and affording the plaintiffs an opportunity to establish the only right which, under the testimony, they could legally have on the disputed premises.

The single question left for determination was whether the defendant in the erection of his trestle and tipple would obstruct the plaintiffs' right of way over the Yeagley land. The court found, as we have seen, that the erection of the tipple would not " interfere with any right of way now in use, heretofore used, or hereafter contemplated, or which would be in anywise necessary for the operation of the mine of Llewellyn & Yeagley." We have carefully read all the testimony in the case and it amply sustains this finding. In fact, a contrary finding would have been against the great weight of the disinterested testimony produced by the parties at the hearing. While Llewellyn in his testimony strenuously maintains that the structure proposed to be erected by the defendant would ruin his firm's business, it was clearly apparent that he was mistaken, and that the defendant's trestle and tipple would not prejudice or interfere with the delivery of coal to the railroad at the plaintiffs' tipple.

There are fourteen assignments of error, but in considering the questions raised, we may group them as the plaintiffs' counsel have done. The first four allege error in admitting testimony to show the negotiations between the defendant and Mrs. Yeagley's agent for the purchase of the real estate in question and her interest in the partnership. If it be conceded that this testimony was erroneously admitted, it did the plaintiffs no harm as it was entirely eliminated from the case by the learned judge in arriving at his conclusion. In the opinion entering the decree, the court says : " The defendant was not treated as having any rights by virtue of his alleged purchase from J. C. Yeagley of an interest in the partnership, but in the decision of the cause was treated as though he were a stranger

to the parties plaintiffs." The other assignments may be considered together as they allege substantially that the " court erred in limiting the issue and the testimony to the obstruction of the wagon road, when the bill averred that the coal in place, mine tracks to and on to the tipple, mine cars, and the necessary ground appurtenant thereto were absolutely necessary for the operation of the plant, and that if defendant was permitted to erect his trestle over the said property it would destroy it." The supposed destruction of the plant would result, as stated by plaintiffs' counsel, because (*a*) it would be impossible to load cars on their siding, (*b*) it would destroy their wagon road, and (*c*) it would destroy their proposed use of the entire property. The defendant avers that he does not intend to use the plaintiffs' siding and, as conceded by their counsel, that is no longer involved in the controversy. As to the other two reasons assigned by plaintiffs, the court did not " limit the issue and the testimony," but heard the testimony of both parties and, on the plaintiffs' testimony, made a distinct finding that " it clearly appears from plaintiffs' evidence that no right of way belonging to complainants over the land of J. C. Yeagley is being obstructed, or that there is any intention on the part of the defendant to obstruct in any manner any right of way which the complainants under the partnership agreement ever acquired, and no interference with the operation or contemplated operation of the mine property of Llewellyn & Yeagley is threatened." But if it be conceded that the whole of the triangular piece of ground was necessary for carrying on the plaintiffs' coal business, it would not have warranted the court in finding that they were entitled to the possession of the land. Their own testimony shows the title in Mrs. Yeagley and that the only right they possess on the premises is " a right of way to the mine." This was granted to the partnership by Mrs. Yeagley as part of the stock of the firm. The erased portion of the partnership agreement shows that Mrs. Yeagley declined to grant the firm any other or further interest in the premises and limited its interest to a right of way over her land. This agreement was in writing and under seal and the only authority, so far as any competent evidence discloses, which gives the plaintiffs a right to occupy any part of the triangular piece of ground. The duty of the

judge, therefore, in determining the right of the plaintiffs to an injunction was to ascertain from the evidence the location of the right of way granted in the partnership agreement and whether the erection of the defendant's trestle and tipple would obstruct or interfere with it. If there was no obstruction, it follows that there was no right to an injunction. The right of the plaintiffs to an injunction does not depend on whether the defendant has title to the land. but whether the plaintiffs have the title or the right to the possession of it. If they have neither, except as to the right of way, as their own evidence discloses, they cannot contest the defendant's right to occupy any other part of the premises.

The learned judge of the court below disposed of the application for an injunction as the facts and the law clearly require, and, therefore his decree must be sustained.

Decree affirmed.


MR. JUSTICE ELKIN, dissenting:

The defendant has no title to the triangular piece of land on which he is attempting by force to construct a tramway and build a coal tipple. He does not have either the possession or the right of possession. He must, therefore, be regarded as a trespasser in this proceeding. The learned court below in entering the decree dismissing the bill said that the defendant was regarded as a stranger having no rights under his alleged purchase of the property in dispute. It was conceded at the argument that defendant was not now asserting title under the so-called agreement to purchase, and therefore is without legal right to justify his acts of trespass. We must accept this as an established fact in the consideration of the case; indeed, no other conclusion could be reached under the testimony, because the only evidence of title offered by defendant was the receipt signed by Joseph H. Berlin, as attorney in fact for Mrs. Yeagley. The receipt does not describe any land, is silent on the subject of possession, and the party who signed it testified that it had been altered by the interlineation of the words "as per agreement" after he had signed it. No evidence was introduced that the self-styled attorney in fact had any authority to sell the interest of Mrs. Yeagley in the partnership or land, and this leaves the defendant without the shadow of legal right

to support his contention.  Here, then, is a case in which the defendant has undertaken to invade and take possession of a property by constructing permanent obstructions upon it, without any legal right, title or interest in the same.  He did not have title to the land, and since he never had possession in fact, nor the right of possession in law, he is a trespasser ab initio.  Under somewhat similar circumstances this court has held that where a person goes upon the property of another and wrongfully builds upon it, he is a trespasser and will be compelled by injunction to remove the wrongful construction: Bright v. Allan, 203 Pa. 394.  Our courts have frequently held that one who attempts to enforce by violence his claim of ownership of land in the possession of another, will be enjoined by a court of equity until he appeals to a proper tribunal for the adjudication of his rights.  If a person under a claim of ownership will be restrained from disturbing one in actual possession until the legal rights are established by an action at law, the present plaintiffs have a much stronger equity against a trespasser without any title.  This principle is clearly recognized in Pomeroy's Equity Jurisprudence, vol. 5, sec. 502, wherein it is said: " Hence a true regard for the interests of both parties requires that a temporary injunction should issue to preserve the property in its present condition till the ownership is decided. . . . The courts are largely guided in forming their conclusion by balancing these possible wrongs against each other, and acting favorably toward whichever party will be the least injured by unfavorable action. . . ."  This doctrine is sound even as between different persons asserting title under a claim of right to the disputed land.  The present case is much stronger because the defendant has no title to the land, and therefore in balancing the wrongs the equities are all with the plaintiffs here.

It was necessary for the plaintiffs to establish one of two things in order to sustain their bill and be entitled to the injunction.  First, that they were the owners of the title, or, second, that they were in possession under a claim of right.  In either event, they were entitled to the injunction.  It is averred in the bill that the title to the piece of land in dispute was in the partnership.  This fact is not only averred in the bill, but at the hearing plaintiffs' counsel offered to prove by

Mrs. Yeagley, in whose name the legal title stood, what real estate belonged to the partnership, with the evident intention of showing that she held the title in trust for partnership purposes, but the court refused to admit the testimony.   This was clear error, because in equity it is immaterial in whose name the legal title stands, if the intent is to convey to the partnership.   The possessor of such legal title will be deemed to hold the property in trust for partnership purposes: 22 Am. & Eng. Ency. of Law (2d. ed.), 93.   There has been and there can be no sufficient reason given for the exclusion of the testimony of Mrs. Yeagley in this respect.   It is said that the purpose of the question was not broad enough.   But this is technical in the extreme, and without merit in view of the ground upon which the court excluded the testimony.   It was excluded on the sole ground that the partnership agreement of 1901 was conclusive of the rights of the partners, and that no title to the real estate could be shown unless therein specified.   Certainly, this cannot be the rule.   The partnership agreement on its face and the evidence offered at the trial show that at the time the agreement was executed there was a dispute between the partners about the title to the land.   Mrs. Yeagley claimed it belonged to her individually.   Llewellyn insisted that it belonged to the partnership under an arrangement made with her husband ten or twelve years prior thereto.   He refused to sign the agreement until the provision relating to the title to the disputed land was stricken out.   It was stricken out before execution, and we must conclude from this fact alone that nothing was settled by that agreement so far as the title to the disputed land was involved.   It is contended, however, that because there had been inserted in the agreement the phrase "and a right of way over land to mine" it necessarily follows that the title to the land was in Mrs. Yeagley, and only the right of way over the same was granted to the partnership. The court below and here rule the case on this ground.   In my opinion, this is balancing the plaintiffs on a too narrow edge to be in keeping with the spirit and purpose of a court of equity.   Even if we concede that under the agreement the partnership acquired no title to the land because of the phrase used, it certainly cannot be contended that defendant acquired any right in the land by reason of this provision.   Just what

was meant by it does not clearly appear. Its meaning is ambiguous, and testimony should have been admitted to explain it so as to show what the rights of the partners were. But no matter what it means, nor what the disputes between the partners were in reference to the ownership of the land, how can a stranger to the title, a trespasser upon the land, raise the question in a collateral equitable proceeding in which these issues were not directly involved? It must not be overlooked that the partners were not asking the court to pass upon their rights in the partnership property. So far as the record shows the partners were standing together in resisting the encroachments of the defendant. As against a trespasser, the bill should be sustained upon the testimony of Llewellyn alone. He testified in positive terms that the land belonged to the partnership, and explained in detail the arrangement by which he put in his coal leases, and the husband of Mrs. Yeagley put in the land as part of the partnership assets. The partnership had been in existence ten or eleven years before the written agreement was entered into. The tipple and tramway had been constructed and in use upon the land by the partnership during all these years. These facts are sufficient to my mind to move a court of equity to restrain the attempted invasion by defendant.

Entirely independent, however, of the question of title, the decree should be reversed on another ground. The uncontroverted testimony shows that the possession of the land in dispute had been in the partnership for upwards of fourteen years prior to the time defendant attempted to violently seize it. There can be no question that a person in possession of land, either as an owner, a tenant, or under a claim of right, can in equity restrain a trespasser from disturbing that possession until the legal rights are properly determined. This is a familiar rule, and will not be questioned. Possession is good evidence of title against all persons except the owner. It is prima facie evidence of title against all persons not having a better right. It constitutes, or rather answers, for a right of property: Com. v. Finn, 108 Mass. 466; Rogers v. Bates, 1 Mich. N. P. 93. That the plaintiffs were in possession is not denied. What answer can there be when a court of equity is asked to restrain a trespasser from violently disturbing that

possession ? To my mind, but one, issue the restraining order.

I would reverse the decree, reinstate the bill, continue the injunction, and preserve the status quo until the parties are fully heard and their legal rights determined by due process of law.