## Llewellyn, Appellant, v. Sunnyside Coal Company.

*Equity—Title to land—Ejectment bill—Deed.*

Where a person takes title to land by a deed with knowledge that his grantor had previously sold the land to another by articles of agreement, and that the purchaser under such articles is in possession, the grantee's remedy to determine his title and right to possession is by an action of ejectment, and not by a bill in equity

ELKIN and POTTER JJ., dissent.

Argued Oct. 6, 1908. Appeal, No. 206, Oct. T., 1908, by plaintiff, from decree of C. P. Cambria Co., March T., 1908, No. 4, dismissing bill in equity in case of D. J. Llewellyn v. Sunnyside Coal Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART JJ. Affirmed.

Bill in equity for an injunction. Before O'CONNOR, P. J. The opinion of the Supreme Court states the case.

*Error assigned* was decree dismissing the bill.

*H. W. Storey,* for appellant.

*F. P. Martin,* with him *Forest Rose* and *Percy Allen Rose,* for appellee.

OPINION BY MR. JUSTICE BROWN, March 15, 1909:

This controversy in a court of equity is over the title to land. The first averment of the complainant in his bill is that he is the owner of it in fee, under a deed to him from Jane C. Yeagley, dated November 12, 1907. Following this there is an admission that in June, 1905, more than two years before, Mrs. Yeagley, through her representative, accepted the offer of Daniel Cauffiel, under whom the appellee claims, to purchase the property for $8,000, and upon the acceptance of the offer, that Cauffiel paid $100 on account of the purchase money, for which a receipt was given to him in the following form:

"JOHNSTOWN, PA., June 18, 1905.

"Received from Daniel Cauffiel One Hundred Dollars as a payment on land and leases sold to said Daniel Cauffiel as per agreement.

"JOS. H. BERLIN,
"Attorney in Fact for Mrs. J. C. Yeagley."

On June 20, 1905, two days after the receipt was given, Mrs. Yeagley executed and tendered a deed to Cauffiel, who refused to accept it for the reason that it did not include all he had purchased. Thereupon the agent of Mrs. Yeagley offered to return to Cauffiel what had been paid on account, but the offer was refused. True, there is an averment that Cauffiel attempted to purchase the property from Mrs. Yeagley for the purpose of defrauding plaintiff, but this was immaterial upon the question before the court below as to whether or not Cauf-

fiel had purchased the property. On or about May 1, 1906, the appellee took possession of the land, the allegation being that it did so without claim of right, either in law or equity, to possession or the right of possession. It did so, however, as successor to whatever title Cauffiel might have had. This situation, as gathered from the bill itself, is that of one claiming to be the owner of land not in his possession, but in the possession of another, against whom the claimant seeks equitable relief by a mandatory injunction. As thus presented by the bill itself, equity clearly had no jurisdiction. "When the complainant himself avers that his right is denied, and when that denial is the very ground of his complaint, it would be a novelty, indeed, for a court of equity to assume jurisdiction:" North Pennsylvania Coal Co. v. Snowden, 42 Pa. 488.

Turning to the answer, there is a distinct averment that on or about June 16, 1905, Cauffiel, in an honest and legitimate manner, sent his representative to J. H. Berlin, who was acting as the duly authorized attorney in fact of Jane C. Yeagley, and purchased the land in dispute; that the said J. H. Berlin, acting with authority from Jane C. Yeagley, agreed to sell the property on the terms set forth in the articles of agreement, a copy of which the appellant attached to his bill, and received $100 on account of the purchase money. A further averment is that neither Cauffiel nor his representative committed any act with fraudulent intent to secure possession of the property; that the appellee is the successor to the right vested in Cauffiel to the property, and that in pursuance of said right it entered into possession of the premises and continues in possession of them by virtue of said right. It is too clear to require elaboration that this is a mere ejectment bill, and as the case hinges upon a disputed legal title, that title must be first settled in an action of law: Duncan et al. v. Hollidaysburg, etc., Iron Works, 136 Pa. 478; Saunders v. Racquet Club, 170 Pa. 265.

When the appellant took title from Mrs. Yeagley in 1907 he knew the appellee was in possession of the land under Cauffiel, who claimed an equitable title to it under an agreement made in June, 1905, with the appellant's grantor. He therefore took title subject to any equitable estate that may have vested in

Cauffiel: Riel v. Gannon, 161 Pa. 289; Brodhead v. Reinbold, 200 Pa. 618.

In an action of ejectment Cauffiel's equitable title may not be established; on the other hand, it may be, and, if so, what could a chancellor then say in justification of a decree now made driving the appellee from the premises and commanding it to remove the improvements which it has erected thereon? The learned court below was compelled to say: "Until the question of title is settled, this court has no jurisdiction to grant the relief for which the complainant prays in his bill."

Nothing said in Llewellyn v. Cauffiel, 215 Pa. 23, has any application to the fundamental question raised in this proceeding. All that was there decided, was that a right of way, which the partnership of Llewellyn & Yeagley acquired from Mrs. Yeagley, one of the partners, was not being interfered with by Cauffiel. That partnership was not in existence when this bill was filed and the right of way is not in this case. Forty-four assignments of error fail to cloud the real situation. They are all overruled and the decree below is affirmed at appellant's costs.

Decree affirmed.


Mr. Justice Elkin, dissenting:

For every wrong willfully committed there should be a legal remedy. The records of this and the former case show that grievous wrong has been done appellant, and although for four years he has stood upon his legal rights, stoutly defending his title and possession on the premises or in the courts, he is now told that equity is not his remedy, try an action at law. With this view of the case I do not agree. When this litigation started in 1905 appellant and his partner were in the undisputed ownership and possession of a coal lease with mining privileges, a tramway running over a triangular piece of land belonging to the partner but set apart for the use of the partnership, a tipple for loading coal on the cars, a railroad siding, and were doing a legitimate and profitable business. They had been engaged in this business for about fifteen years when Cauffiel, the predecessor in title of the appellee company, having acquired the

right to mine coal on an adjoining property lying back of the operation conducted by appellant, undertook to force his way to the railroad siding over the intervening land in the possession of appellant for the partnership and belonging to the partner, without any lawful right to invade that property. Cauffiel began the construction of a trestle or tramway from a point on the hill where the new opening was being made and extending in the direction of the railroad siding and over the intervening land which did not belong to him. When this overhead construction was about to be erected on and over the intervening triangular piece of land without the consent of the owner or those in possession, appellant filed a bill in equity seeking to restrain the unlawful invasion. This bill was filed in the name and for the benefit of the partnership. It averred title and possession and how held; set forth the facts relied on to show the threatened invasion; stated the injuries that would result from such invasion, including interference with the use of tipple, a railroad siding and triangular piece of land to such an extent as to cripple and perhaps destroy the operation of the complainant's property. An answer was filed admitting the threatened invasion but denying any intention to interfere with the tipple or railroad siding or the use of the triangular piece of land by complainant. The right to construct the tramway over the property in question was asserted under a so-called agreement to purchase the triangular piece of ground from the partner of appellant who held the legal title. This agreement in the nature of a receipt for a small amount of money on account of land and leases not described nor defined in any way, and the right to acquire title thereunder having either been voluntarily abandoned, or the purchase having been refused after tender of deed, did not at the time nor did it at any time since give to Cauffiel or his successor in the coal business any legal right to the title or the possession of the land in question which justified the appropriation by force of a right of way upon which to construct an overhead tramroad. This so-called assertion of title under an attempted purchase never completed and long ago abandoned by refusal to accept a deed when tendered may very properly be termed a fiction of this case without

substantial merit, but up to this time sufficient to protect the wrongdoer. At the first hearing this position was practically conceded by the learned court below sitting as a chancellor who put his conclusion upon the ground that Cauffiel was treated as a stranger to the title, but held appellant could not restrain the invasion because the outstanding legal title was in the partner and not in the partnership. In other words, the partner having the legal title could have enjoined the threatened invasion but the partnership could not. On appeal to this court the conclusion reached by the court below was sustained and as the matter then stood that proceeding was at an end. It must not be overlooked, however, that both in the court below and here, it was then pointed out that in the answer filed by Cauffiel it was averred that there was no intention to interfere with the tipple or railroad siding or the operation of the plant represented by complainant and that because the legal title to the land in question was not in the partnership, equity would not interfere to protect against injuries not intended and parties not holding the legal title. In that case, Brother MESTREZAT in writing the opinion, among other things, said: "The right of plaintiffs to an injunction does not depend on whether the defendant has title to the land but whether the plaintiffs have title or the right to the possession of it." See Llewellyn v. Cauffiel, 215 Pa. 23, 30. This can only mean that the decision in that case rested upon the ground not that the defendant had any title to the land or the right to construct a tramway over it, but that plaintiffs had not shown such a clear title, or right of possession as would justify a court of equity to interfere by injunction. Thus the case stood when that litigation ended. Llewellyn subsequently purchased from Mrs. Yeagley, his partner, the title to the triangular piece of ground together with all her interest in the partnership. He then had the absolute title to the land in question and succeeded in his individual right to all the property and assets of the partnership. In the meantime, Cauffiel, or the appellee company, his successor in the coal business, completed the tramway over the triangular piece of land, built a tipple, got possession of a siding and practically drove appellant out of business. In fact they did all the things which in his answer

to the former bill in equity Cauffiel averred he had no intention of doing. On the other hand, all those threatened injuries which appellant averred in the first bill filed have since resulted. Appellant having acquired the legal title to the property filed a second bill, and this is proceeding now under consideration, in which all of these things are averred, including the averment of title, and asked for a mandatory injunction in order that he might enjoy the use and possession of his own property. When this case came on for hearing in the court below appellant offered proof in support of every averment showing title, right of possession, wrongful invasion, supplemented by a specific offer to prove that appellee had no title to the triangular piece of land, that it had abandoned its claim to purchase the title under the receipt referred to in the opinion of this court, by refusing to pay the purchase price and accept the deed when tendered, and that subsequently he, appellant, had purchased the legal title to the triangular piece of land and all interests of his partner, and was the sole owner. The offers were refused by the learned court below on the ground that all these questions had been passed on by this court in the former case and that the ruling in that proceeding was decisive in the one at bar. As I view the case this was clear error. In the former case appellant was denied equitable relief on the ground that he did not show title in himself but in his partner, Mrs. Yeagley, and therefore had failed to establish that clear legal right which is the foundation of ever, proceeding in equity. In the present proceeding he supplied what this court said was lacking in the former one, that is, he averred and offered to prove legal title in himself and no title or right of possession in appellee. If he had done so in the first proceeding no one would seriously question his right to an injunction, and certainly having supplied in a proper manner and for a legitimate purpose the missing links in his chain of title he is now entitled to the protection he could then have demanded except for the technical reason then given but which no longer exists. Of course, he can now bring an action of ejectment to determine his title about which there is not and cannot be any substantial dispute, and when this is determined he can recover the possession of his property violently taken

from him as well as damages suffered by the wrongful appropriation thereof by appellee, but to my mind this is placing the burden on the wrong shoulders by requiring a person in the ownership or possession of property for fifteen years during which time a prosperous business had been conducted, to first establish in an action at law all the incidents of title and ownership before equity will relieve against the trespasses of a wrongdoer. As against a trespasser without title, possession alone is sufficient to sustain a bill for injunction. This case is somewhat anomalous. Appellant has the title to the land in question, and did have and still should have the right to the use of it, together with the tramway, tipple and railroad siding now torn up without his consent, for the purpose of operating his plant and conducting his business. The appellee by taking possession of a certain portion of the triangular piece of land, the title to which it never acquired but which is in appellant, has constructed a tramway and made a connection between its mines and the railroad siding and for several years has conducted its operation over the property of appellant to his great injury, resulting in the partial or total destruction of his business, and after four years of struggle to maintain his property rights, a court of equity says to him, "you must begin all over again." In other words, possession having been taken by a subterfuge, it can now be maintained by a fiction. I cannot agree that this is either right or just. It is a fundamental principle of government, a sacred right of property, guaranteed by constitutions, protected by statutes, and declared by courts in every jurisdiction in which the spirit and purpose of the Anglo-Saxon race prevail, that every owner of the soil, no matter how humble or great, has the legal right to the use and enjoyment of his own property, and to the protection of the law in defending his possession against all the world intruding without right.

For these reasons, I would reverse the decree and remit the record for further hearing with instructions to admit the proof offered in evidence, and if the averments are sustained by the proofs, the relief prayed for should be granted by compelling the removal of the overhead tramway, and all other obstructions

or property, wrongfully constructed by appellee, or its predecessor in title, upon the land of appellant, and would enjoin all interference with the right to use and enjoy his own property in every lawful manner.

POTTER, J., concurs in this dissent.